# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**CARRIE REDMOND,**

    **Plaintiff,**

**v.**                                                         Case No. 8:08-cv-884-T-30EAJ

**CEMEX, INC.,**

    **Defendant.**

_____/

## ORDER

THIS CAUSE comes before the Court upon Defendant's Motion for Summary Judgment and Incorporated Memorandum of Law (Dkt. 12), Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment (Dkt. 23), Plaintiff's Motion for Summary Judgment and Memorandum of Law in Support (Dkt. 19) and Defendant's Response in Opposition to Plaintiff's Motion for Summary Judgment and Supporting Memorandum of Law (Dkt. 24). The Court, having considered the motions, responses, memorandums, depositions, exhibits, and being otherwise advised in the premises, finds that Defendant's Motion for Summary Judgment and Incorporated Memorandum of Law (Dkt. 12) and Plaintiff's Motion for Summary Judgment and Memorandum of Law in Support (Dkt. 19) should be denied.

## BACKGROUND

Plaintiff Carrie Redmond's ("Plaintiff") two-count complaint against Defendant Cemex, Inc. ("Defendant") alleges that Defendant subjected her to unlawful retaliation in

violation of Title VII of the Civil Rights Act of 1964 ("Title VII) and the Florida Civil Rights Act ("FCRA") after she complained to Defendant about a co-worker's racial remarks.

Plaintiff's ethnicity is Puerto Rican and Italian. Plaintiff began her employment with Defendant on January 16, 2006, in the position of sales administrative assistant. As a sales administrative assistant, Plaintiff's duties included printing and checking customer invoices for accuracy, logging inaccuracies, preparing invoices for mailing, running Sarbanes-Oxley reports, and reconciling orders with deliveries of company products.

According to Plaintiff, starting in about September or October 2006, Plaintiff's co-worker[1] Dawn Cormican ("Cormican") made derogatory remarks, which Plaintiff claims were based on Plaintiff's ethnicity. Specifically, in response to Plaintiff's invitation to her baby shower, Cormican stated that she did not want to get lost in the "ghetto," she wouldn't be caught in the "ghetto" and that Plaintiff was "ghetto." (See Plaintiff's deposition at 62-63). Around this same time, Plaintiff overheard Cormican tell a black coworker that "she don't put grease in her hair like you people." (Id. at 72-73). Also, on or about November 23, 2006, Plaintiff, on her day off, brought her children to work and overheard Cormican say, "I can't believe she [Plaintiff] brought those colored kids in here again." (Id. at 65-68). Plaintiff stated that she never told anyone at the workplace what Cormican said about her

---

[1] Cormican was not a supervisor or a manager and was not in charge of any other employees. Prior to March or April of 2006, Plaintiff and Cormican were assigned to the same area and had some interaction. However, after that time, there was less interaction because Plaintiff and Cormican were no longer working in the same assigned geographical area. Plaintiff and Cormican had separate offices but worked on the same floor.

children. At that time, Plaintiff also did not complain to anyone at the workplace regarding Cormican's other comments.

Plaintiff went on maternity leave from approximately December 15, 2006, until February 6, 2007. Plaintiff did not have any further incidents with Cormican where Cormican said any derogatory or negative comments directly to Plaintiff based on her ethnicity. In February or March of 2007, Defendant's human resources department conducted an investigation into employees' complaints of favoritism occurring in the workplace. Plaintiff was identified as one of the employees who received favorable treatment from her supervisors. In the course of the investigation, Plaintiff was interviewed. During this interview, Plaintiff did not mention Cormican's prior inappropriate comments.

In or around March or April 2007, Plaintiff's coworker Brandy McDonough ("McDonough") told her that Cormican had referred to Plaintiff as a "ghetto whore" and that Cormican said you could only see two of Plaintiff's children with the lights on because they were "so dark." (Plaintiff's deposition at 109). On or about March 29, 2007, Plaintiff went to her supervisor Kristina Benekos ("Benekos") and complained about Cormican.[2] Benekos then took Plaintiff with her to report Cormican's behavior to Benekos' immediate supervisor Karen Delozier ("Delozier"). According to Plaintiff, she told Benekos and/or Delozier the statements that she overheard Cormican state to her directly in addition to the statements that were related to her by McDonough. According to Defendant, Plaintiff never told anyone

---

[2] It is unclear in the record what Plaintiff specifically told Benekos about Cormican other than Cormican saying something inappropriate about Plaintiff's children.

about the statements that Cormican made directly to Plaintiff and only complained at most about the statements that she heard second-hand through McDonough. Delozier reported Plaintiff's complaint about Cormican to Sandra Ward ("Ward"), the human resource manager.

According to Plaintiff, after hearing nothing from Ward regarding her complaint about Cormican, on or about April 5, 2007, Plaintiff filed an anonymous complaint via Defendant's website. The complaint stated that Cormican is "known in the office as a racist and Carrie [Plaintiff] told the supervisor how uncomfortable she is around Dawn [Cormican]." (See Exhibits to Plaintiff's deposition at CEMEX/REDMOND EEOC 0325). The complaint also stated that McDonough told Plaintiff that she heard Cormican use the "Ni**er word" numerous times about people in the office and that Cormican is "making people uncomfortable with her racial remarks and nothing is being done." (Id.).

Soon thereafter, Ward began investigating the anonymous complaint. In the course of the investigation, Ward interviewed Plaintiff. According to Plaintiff, Plaintiff told Ward at some point about the racial comments Cormican stated to Plaintiff directly. According to Ward, Plaintiff only told her about the comments that she heard second-hand from McDonough and admitted that these comments were all based on hearsay. During Ward's interview with Cormican, Cormican admitted that she may have called another coworker a "sand nigger" but could not recall because if the statement was made, it was made in 2005 or early 2006 and that she may have used the word "nigger" at work during a conversation

with her boyfriend over the phone. (Deposition of Ward at Volume I:101-102). Cormican also admitted to using the term "ghetto." (Id. at Volume II:16).

In total, in response to Plaintiff's anonymous complaint, Ward interviewed thirty-three employees during a period of six days. According to Ward, no employee reported hearing any racially inappropriate comments from Cormican other than Plaintiff and McDonough. Aside from Plaintiff, no employee stated that he or she felt uncomfortable in the workplace. Ward also stated that some employees speculated that Plaintiff's complaint against Cormican was out of retaliation because many employees believed that Cormican was the employee that complained about Plaintiff receiving favorable treatment from her supervisors, which was the subject of a human resource investigation that concluded immediately prior to Plaintiff's initial complaint about Cormican.[3]

Ward concluded at the end of the investigation that Plaintiff should be terminated for filing a bad faith complaint against Cormican based solely on hearsay. Ward believed that Plaintiff's complaint was filed out of retaliation against Cormican and noted that Plaintiff and Cormican had not gotten along for a long time in the workplace, which was also discussed by some of the employees Ward interviewed. Ward also concluded that McDonough should be terminated for her participation in the bad faith complaint and that Cormican should be

---

[3] During her deposition, Plaintiff denied that her complaint against Cormican was retaliation and stated that she believed a different employee had filed the "favoritism" complaint with human resources.

counseled/disciplined for making inappropriate comments. Plaintiff was subsequently terminated on or about May 17, 2007.[4]

## DISCUSSION

**I.      Summary Judgment Standard**

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. Id. Throughout this analysis, the court must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in its favor. Id. at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that

---

[4] The circumstances surrounding Plaintiff's termination are not relevant at this point because Defendant's and Plaintiff's motions for summary judgment turn on the issue of whether Plaintiff engaged in statutorily protected activity, which will be discussed in more detail herein.

there is a genuine issue for trial. Celotex, 477 U.S. at 324. The evidence must be significantly probative to support the claims. Anderson, 477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. Fernandez v. Bankers Nat'l Life Ins. Co., 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296 (11th Cir. 1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 248; Hoffman v. Allied Corp., 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a jury question. Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989).

## II. Legal Analysis

To establish a *prima facie* case of retaliation under Title VII,[5] Plaintiff must demonstrate that: (1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action; and (3) that the adverse employment action was causally related to the protected activity. Brochu v. City of Riviera Beach, 304 F.3d 1144, 1155 (11th Cir.2002). In its motion for summary judgment, Defendant argues that Plaintiff cannot establish a *prima facie* case of retaliation because she cannot establish that she engaged in statutorily protected

---

[5] Florida courts have held that decisions construing Title VII are applicable when considering claims under the FCRA, because the Florida act was patterned after Title VII. Harper v. Blockbuster Entm't Corp., 139 F.3d 1385, 1387 (11th Cir. 1998).

activity. Plaintiff claims in her motion for summary judgment that this is a direct evidence case and that the undisputed facts demonstrate that Plaintiff subjectively and objectively believed that Defendant engaged in an unlawful employment practice.

An employee engages in statutorily protected activity if: (1) she has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter ("the participation clause"); or (2) she has opposed any practice made an unlawful employment practice by this subchapter ("the opposition clause"). Clover v. Total Sys. Servs., Inc., 176 F.3d 1346, 1350 (11th Cir.1999) (*quoting* 42 U.S.C. § 2000e-(3)a). The participation clause "protects proceedings and activities which occur in conjunction with or *after* the filing of a formal charge with the EEOC; it does not include participating in an employer's internal, in-house investigation, conducted apart from a formal charge with the EEOC." E.E.O.C. v. Total Sys. Servs. ., Inc., 221 F.3d 1171, 1174 (11th Cir. 2000) (*emphasis added*).

A plaintiff engages in statutorily protected activity under "the opposition clause" when she opposes an employer's conduct based on "a good faith, reasonable belief that the employer was engaged in unlawful employment practices." Little v. United Techs., Carrier Transicold Div., 103 F.3d 956, 960 (11th Cir.1997). This standard involves a subjective and objective component. Id. Therefore, "[a] plaintiff must not only show that [she] *subjectively* (that is, in good faith) believed that [her] employer was engaged in unlawful employment practices, but also that [her] belief was *objectively* reasonable in light of the facts and record presented." Id. (*emphasis in original*).

"The objective reasonableness of an employee's belief that her employer has engaged in an unlawful employment practice must be measured against existing substantive law." Clover, 176 F.3d at 1351 (*citing and quoting* Harper,139 F.3d at 1388 n. 2 (failure to charge employee who opposes an employment practice with substantive knowledge of the law "would eviscerate the objective component of our reasonableness inquiry")). An employee cannot be said to have a subjectively or objectively reasonable belief that she opposed an unlawful employment practice when her opposition is based on conduct that is not proscribed by Title VII. Harper, 139 F.3d at 1388. Also, an employee's opposition to an act of discrimination or harassment by a co-worker does not fall within the protection of Title VII unless the discrimination can be attributed to the employer, because Title VII only prohibits unlawful employment practices or acts on the part of the employer, not its employees. Little, 103 F.3d at 959-60. The employee need not prove the underlying claim of discrimination which led to her protest as long as she can establish that she had a reasonable good-faith belief that discrimination existed. Wilson v. Department of Children and Families, 2006 WL 66723, Case No. 302CV357J32MMH (M.D. Fla. January 10, 2006).

Importantly, for purposes of determining whether an employee satisfies the objective reasonableness component of the test, it is critical to distinguish between the conduct that the employee opposes, i.e., what she saw or heard and then reported to the employer, and the actual conduct. Clover, 176 F.3d at 1352. In other words, the relevant conduct does not include conduct that actually occurred or that was averred in an EEOC complaint by the

alleged victim. Id. Rather, what counts is only the conduct the employee opposed, which cannot be more than what she was aware of. Id.

Although the employee need not have enough evidence to prove an underlying claim of discrimination, the Eleventh Circuit has held that "[i]t is objectively unreasonable to believe that the use of racially discriminatory language on one occasion by one co-worker away from the workplace is enough to permeate the workplace with 'discriminatory intimidation, ridicule, and insult' and to 'alter the conditions of the victim's employment and create an abusive working environment.'" Butler v. Alabama Department of Transportation, 536 F.3d 1209, 1214 (11th Cir. 2008) (citing Rojas v. Florida, 285 F.3d 1339, 1344 (11th Cir. 2002)).

In this case, it is impossible for the Court to determine whether Plaintiff had an objectively reasonable belief that Defendant engaged in an unlawful employment practice, i.e., that there was a racially hostile work environment, because both Plaintiff and Defendant rely on material disputed facts to assert their points. Indeed, the record is rife with disputed facts. For example, as set forth herein, it is imperative for an analysis of whether Plaintiff engaged in statutorily protected activity to know specifically what Plaintiff reported to Defendant, since what is reported is the relevant analysis and not what was discovered through Defendant's investigation. However, Plaintiff and Defendant dispute what Plaintiff reported to Defendant. Defendant argues that Plaintiff's complaints were based solely on hearsay and that Plaintiff admitted during the investigation that everything she heard about Cormican was second-hand through McDonough. Plaintiff argues the contrary. Plaintiff

contends that she told Defendant about the racially inappropriate comments Cormican stated to her directly and made it clear that Plaintiff's complaint was not solely based on hearsay.

It is also unclear whether other employees were made uncomfortable by Cormican or whether Plaintiff was the only employee who felt uncomfortable by certain statements attributed to Cormican. Plaintiff's deposition testimony is also unclear as to what she reported to Defendant and how she and other employees were affected by Cormican's statements. It is also disputed whether Plaintiff's initial complaint to Benekos and/or Delozier included all the statements Plaintiff heard directly from Cormican or just statements she heard second-hand from McDonough. Although the April 5, 2007 complaint indicates that Plaintiff's allegations were based solely on hearsay, Plaintiff maintained during her deposition that Defendant was aware of the other statements Cormican made directly to Plaintiff. There is also evidence that McDonough did not view Cormican as racist and that Plaintiff was the only employee that viewed Cormican as racist. Lastly, there is a factual dispute regarding whether the phrase "ghetto" and a comment regarding the application of grease to one's hair are racially derogatory.

Given the number of disputed facts, it would be inappropriate for the Court to make a determination as to whether Plaintiff engaged in statutorily protected activity. The Court cannot decide a genuine factual dispute at the summary judgment stage. Rather, there exists a conflict in substantial evidence to pose a jury question as to what Plaintiff specifically reported to Defendant and whether the behavior Plaintiff complained of is sufficient to come

close to establishing a racially hostile work environment given the timing and severity of the statements.

The Court cautions that although Plaintiff does not have to assert enough evidence to establish an underlying claim of racial discrimination, the Plaintiff does have to come close enough to prove the existence of racially derogatory comments which were severe and pervasive enough to alter a term or condition of Plaintiff's employment. The Eleventh Circuit has made it clear, as discussed herein, that a single offensive comment made by a coworker is insufficient to establish a good faith belief that Defendant committed an unlawful employment action.

## **CONCLUSION**

For the reasons set forth above, it is hereby ORDERED AND ADJUDGED that:

1. Defendant's Motion for Summary Judgment and Incorporated Memorandum of Law (Dkt. 12) is **DENIED**.

2. Plaintiff's Motion for Summary Judgment and Memorandum of Law in Support (Dkt. 19) is **DENIED**.

**DONE** and **ORDERED** in Tampa, Florida on June 19, 2009.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Even\2008\08-cv-884.msj.frm